Case number 24-3042, Matthew Warman v. Mount St. Joseph University. Oral argument not to exceed 15 minutes per side. Ronald Berruti, for the appellant, you may proceed. Good afternoon, Your Honors. May it please the Court, I'll try to keep my voice up. My name is Ronald Berruti of the Murray Nolan Berruti Law Firm. At counsel table is co-counsel, Mr. Matthew Okishi. And I'd like to reserve five minutes for rebuttal. So may it please the Court, it is hard to imagine a person being given much worse treatment than the plaintiff, Matthew Warman, was given at Mount St. Joseph's University because he didn't get vaccinated. He was pulled into a police station, repeatedly called and harassed to come in, which created, according to the Supreme Court, an implication of an obligation to attend, which he did. He was then brought into the back room where he was berated for over an hour by two police officers, including the chief of police and a captain. And they treated him as if he was essentially a criminal for not getting vaccinated, due to his religious beliefs. And he also had significant medical concerns as well, in that they knew he had been discharged from the Marines due to his medical situation with brain tumors and a ripped gut from having eaten an MRE. He had severe psychological issues that they knew about already. He had depression and anxiety at the clinical level. He was being treated by a VA psychiatrist. Yet they treated him as if he was a criminal for not getting vaccinated. The court below found that this did not constitute an arrest. Matthew Worman, in paragraph 55 of the Second Amended Complaint, specifically says that he was not free to leave. At that point, there's not a question as to whether or not it was believable. He verified that he was not free to believe. And to the extent that there was any question as to that fact, when in their motion, extraneous papers were put in by the defendants, Matthew Worman put in a declaration swearing to the fact that he was told he could not freely leave. At the very least, the court below should have allowed Mr. Worman to amend his complaint to include that fact, because he was arrested, in fact, by officers Kuh and Koopman. Officer, I'd like to all touch on the Mount St. Joseph's Police Department and its question of sui juris. Under the Ohio law, the Mount St. Joseph's Police Department is a public office. As a public office, it is subject to process. Since it is subject to process, ergo, it is subject to being sued as an individual entity. Here we sued Mount St. Joseph's Police Department, which is a public office. They were engaged in state acts. Are you relying on the Freedom of Information case to say it's a public office? I'm relying upon the Ohio statute that we've cited in the brief, which provides that they are engaging in the equivalent of what is a municipal police action on the campus. Do those two issues rise and fall together? I mean, it's possible for them to be acting under color of law because of the status of the police department, but still not be an entity that can be sued. I believe in this case that they are an appropriate entity for being sued because they are engaged in state acts. If they weren't engaged in state acts, I would assume that they're not subject to being sued. If they're just doing campus activities, say. But here they were actually bringing somebody in and interrogating him. But I think you're conflating two ideas. One is, are they acting under color of law, under state law? Are they acting under color of state as opposed to private authority? And it's a separate question whether an entity is the kind of entity that can be sued. I mean, you can have a department of another entity that acts under authority of law, state law, but is not an entity that can be sued. I mean, that the parent is the entity that is sued. Right, and in those cases, the parent, and I think the court below noted two different cases. In those cases, the parents were municipal governments. So the municipal government, of course, is capable of being sued as opposed to the local police department. In this case, the parent is not a municipal entity. It is a private entity. And the only state actor, the only state entity, is the MSJPD in this particular case. So in other words, if MSJPD could not be sued for the state acts, what essentially the defense is asking for is an immunity for their acts. Because Mount St. Joseph's University itself is not a state actor, but for, we claim, that it was imposing its mandate on MSJPD to enforce. And in doing so, it engaged in state acts. So if the court agrees that MSJU was indeed engaging as a state actor, then perhaps it would be appropriate to say that MSJPD is not sui juris because there is a state actor above it that is subject to the process. But in this case, they're making the opposite arguments. They're saying, on the one hand, the police department is not sui juris, and the university is not a state actor. And essentially, that's an immunity. And there's no such immunity. Someone's got to be held responsible for violations of constitutional rights. Could that someone be the two officers, Koopman and Kuh? So they possibly could be construed as state actors, while the police department is not a state actor or municipality or something like that. So the action would be against the two officers as state actors. Well, sure. There's always that. Of course, they're being sued as state actors. But, you know, under the Monell standard, if their actions violate constitutional rights that are well established, Fourth Amendment arrest, well-established right, their employer, state actor, could be held liable for their individual conduct. What essentially the defense is arguing is that there's no one above them that could be held liable. These are rogue police officers that have no authority. There's no state authority over them. And it's sort of like a non sequitur when you think about it. Somebody is a state actor employing them that has to be responsible for their acts if they are violating known constitutional rights. We believe that that is both, actually, in this case, as a matter of law, the police department is, given that it is a public office under Ohio law. And we also believe that based upon its actions of, essentially, having the vaccine policy treated as being enforced, I should say, legally by the police officers and the police department, that the university and those acting under it to enforce this, to create this enforcement mechanism through the police, were also state actors. And that's really the third part of my argument, is that Mount St. Joseph's University and those people who imposed this vaccine mandate and then had the police department enforce it in such an egregious way, became state actors and, therefore, were also liable under the constitutional provisions. What are the facts that you say support that these two police officers were acting under the direction of the university? Well, we just start with the principle that they, and taking the pleading in the light most favorable to the plaintiff, we don't know what happened because there's been no discovery, but we do know that they told Mr. Warman that he would not be allowed to leave until the defendant, Elliot, came. So they were waiting for defendant Elliot to come. Defendant Elliot's supposed to come, presumably. Defendant Elliot is the one who had them do this so that she could speak to him. Ultimately, it was determined that defendant Elliot could not come, and, therefore, they released him and allowed him to go. Did you plead that Elliot directed them to hold him until her arrival? I don't think I specifically pled that because, again, it's a verified complaint, so we can't verify facts that are not yet subject to discovery. That's something that we'd have to get in discovery for certain. So I want to circle back to your sui generis argument. So there might be some logic to your argument, but is there precedent for that? Obviously there's precedent for cases where it's a city police department, the department itself can't be sued, and so it's the city who winds up getting sued. So I get you, but there's lots of private universities out there. Is there a case out there where this has been done in Ohio, under Ohio law, where they've said that this private university that has this police department, when their police are acting, this means that because the university itself is not sui generis that the department is or that the university is? What is the authority for that? I have not found a case because I don't think that there's a case like this. Again, the facts were so egregious. But in this case there certainly was a state-authorized police department that had state-authorized and licensed officers, trained officers, who took this gentleman in the back, essentially arrested him, and prevented him from leaving. And therefore there has to be some remedy, given Monell, you would think that there is some state action, that state authority that has to be responsible for that. Are you arguing that you're subject to the requirements of Monell? I'm suggesting that Officers Kuh and Cooperman are state actors, and if they knew that they were engaging in constitutional violations, well-defined constitutional violations, the entity over which they work is liable for their actions, and that's a Monell. I guess I'm getting confused. I mean, the officers themselves can be subject to a 1983 action? Correct. Okay. Now you're saying that you want something more, you want an entity to be liable, right? Correct. To do that, are you saying that to do that you have to satisfy Monell? I believe that's correct. And that's the case whether the parent is private or public? I think Monell stands for the proposition, because Monell talks about municipalities, that it's a state government entity that can be held responsible. So there has to be some state government entity that is responsible for the acts of licensed police officers, in this case Kuh and Cooperman. So therefore, I think when you look at the Monell standard, there has to be an entity, in this case MSJPD, which is responsible as a state entity for their conduct. Otherwise, there's essentially an immunity. Okay, so let's say hypothetically we were to conclude that the police department cannot be sued, but its parent, the university, can be sued. What is the standard of liability for the university in that capacity? Is it Monell, or is it something else? It's given that if the court is of the mind that MSJPD is not sui juris, then the entity itself has to be, the university itself has to be. And, yes, that would then be Monell again. But, again, my argument is that they're both liable for different reasons. The police department, because it is the state authorized entity, and the university because it imposed its mandate through the police department on Mr. Warman so that it engaged in traditional public function, essentially, in the actions against Mr. Warman. My time is up, unless you have questions. One quick question. You really haven't addressed, and you're out of time. Maybe you can address on rebuttal. Your First Amendment free exercise claims, the Second Amendment claims, equal protection claims, are those, are you appealing the district court's determination as to those claims? Well, certainly the First Amendment. He's got a free exercise claim, and he's not being allowed to, he did put in for a religious exemption, and he wasn't permitted to, he wasn't given a religious exemption because of, essentially, the hostility toward him and his religious beliefs by the state actors, certainly. I think the district court found that the complaint does not allege with particularity the facts that would support claims under the free exercise clause, the Second Amendment, equal protection. I'm just wondering what your very, very quick response is to that. I think Second Amendment, I think we don't have it, and I'll give that. The equal protection, I mean, I'll be candid. I think it's not a very strong claim, so I'm not going to spend my time arguing it. Okay? So one other question. How is the university itself a state actor for purposes of these constitutional claims? Because the university itself had a state entity under its jurisdiction, and it had that state entity enforce a private mandate, and therefore in using a state entity to enforce its private policy, it was engaging in conduct that is public conduct, and therefore it became liable as a state actor. But there's no case that says that. No, I think there are cases. Not in this particular context of a state police department on campus, but there are cases that suggest that a private actor can become a state actor by virtue of its acts being essentially a public function. That's the public function test. One quick, quick question. You're no longer challenging the district court's determination as to the Rehabilitation Act claim. That seems not to be. Well, no, actually we are. And, again, I'm out of time. You can address that maybe in rebuttal. Okay, very good. Thank you, Your Honors. Good afternoon, Your Honors. Alana Linder with Manley Burke on behalf of the Mount St. Joseph University. With us today I have my co-counsel, Tim Burke. We also are joined today by Dr. Williams, the president of Mount St. Joseph University, and Ms. Paige Ellermann, the general counsel of Mount St. Joseph University. The district court is an experienced district court. It's highly unlikely. The district court made seven or six or seven different errors here in dismissing the complaint. What's much more likely, and why we ask that this court affirm, is that Mr. Worman simply failed to state a viable claim and meet basic pleading standards on any of these claims. I would like to first turn to Mr. Worman's Fourth Amendment claim because it actually, as you've just seen, it does touch on several of the different issues on appeal, including whether we have a proper defendant with the police department, whether the claim was properly pled, and whether the district court abused its discretion in denying Mr. Worman further leave to amend based on that declaration. With respect to the police department, very briefly, Judge Davis, you asked, is there any case law out there that says that you can sue a police department, maybe in some capacities but not in others? There is case law. In this tract, if you look at Rule 17b-3 of the Federal Rules of Civil Procedure. My question was a little more narrow than that. A police department for a private university. Yes. There is case law. It's not necessarily from Ohio, but if you follow the logic from an Ohio case, we can get there. The Federal Rule 17b-3 says you look to state law to determine whether an entity is capable of being sued. When you look at Ohio case law, there's a case, Barnes v. City of Cleveland Division of Records Administration. There is a unique carve-out under Ohio law for the Public Records Act. That is the only circumstance in which a law enforcement agency can be sued. I want to acknowledge that it is possible in that limited circumstance to name as a defendant a law enforcement agency. However, as held in that Barnes case, they explicitly said, while you could find that a police department is sui juris in that public records context, such departments are not sui juris in other contexts such as in civil torts claims. Then if you go to the Fleck v. Trustees of the University of Pennsylvania, I recognize it's not an Ohio or Sixth Circuit case, but it's close as I could find here with a private university's police department being found to not constitute a proper defendant despite the fact that Pennsylvania law, like Ohio law, similarly grants the police officers the plenary power similar to a municipal police department. What do we do if we conclude we agree it's not sui juris, but it is state action? You're saying if you find that it is not sui juris or is sui juris? That it is not, but that the actions of the officers and anyone in the police department is state action under 1983. Absolutely. With respect to the Fourth Amendment claim specifically, because it's the only claim that Mr. Worman alleged against the police department but not also the university, there would be no difference. He could still pursue the claim against the two individual officers, Kuhn and Koopman. It then becomes a question of whether Monell would kick in to somehow hold the university liable for his other claims that were brought against the university in addition to the police department. With respect to the Fourth Amendment claim, I don't think it changes anything. He would essentially just have two instead of three named defendants left under that claim. Turning to that Fourth Amendment claim, even if you did find that Mount St. Joseph is a proper defendant, it doesn't matter because at the end of the day, there is no direct involvement with an actual seizure here by anybody. And Mr. Worman has kind of- No direct involvement with what? Nobody has actually caused a seizure here. And you need to find, and this is what the district court found, that because there was no seizure, we don't even need to worry about any of the other parts of this test. What, he was just hanging out there for over an hour? Not exactly. I don't recognize that. But this court, following the Supreme Court's Mendenhall test, has established a multi-factor test that looks at the totality of the circumstances. And if you look, for example, at U.S. v. Swanson, which is from this circuit, there's about 10 or 11 different factors that are supposed to be considered to determine whether a reasonable person in a similar situation would objectively believe he or she was not free to leave so as to constitute a seizure. Mr. Worman has hung his hat on one of those 10 or 11 different factors. He's saying he was told he was not free to leave. We're not disputing that he has alleged he was told he could not leave. But that in and of itself is insufficient to constitute a seizure. In U.S. v. Swanson, that same factor was present, as were two additional factors that tend to weigh in favor of finding a seizure, the presence of weapons and physical touching. In Swanson, they not only were told they couldn't leave, there were weapons brandished by the officers, and the individual was kind of put up against a wall and frisked. And yet in Swanson, that alone wasn't enough to find a seizure. So certainly here, when you only have one of the factors, that's insufficient under the Sixth Circuit precedent to find a seizure. Of course, if you did find a seizure, it would go on to the reasonableness test, and then if it was unreasonable or qualified immunity, I don't believe the court needs to get here because as the district court found, there was no seizure. I would like to move on and briefly talk about the vaccine policy. To the extent Mr. Warman claims that it was, quote, enforced by the university or by the police officers, that is a conclusory allegation that is not to be given persuasive consideration on a motion to dismiss. Just last month, the Western District of Michigan came out with a very similar opinion. It was another nursing student with a COVID vaccine policy challenge. The facts were a little different because obviously that's a public university, but in that case, the court rejected almost identical allegations to what you find in paragraph 52 of Mr. Warman's second amended complaint, where he basically conclusively stated the clinical partners of that other school were under the control and supervision of the state actor. That alone is insufficient. There's no other facts in the record that would suggest that the police officers somehow were enforcing a policy. We recognize that Ohio's statute does provide and include and it references that the police have the ability to, quote, enforce university policy, but that doesn't mean that they enforce every policy. For example, if a student is accused of cheating, you're not going to bring the police to enforce that. You have an academic dishonesty panel and a disciplinary process to go through with that. But even if the court somehow, and we do maintain that there's no state action. Well, what were they doing? With regard to what, Your Honor? What were the officers doing if not enforcing that policy? I'll answer that in a two-part. So one, it's not entirely clear from the record. Obviously, the plaintiff set forth the facts, but our position is that it was two veterans. I mean, the officers were fellow veterans and the university was trying to do whatever it could to help as many of its students stay. So they thought maybe having veteran-to-veteran talk to them. Granted, it didn't necessarily go as well as they perhaps planned. But I also, the second part of how I would respond to that is think about what would have happened if you take the police interaction out completely? Like, what if that never happened? Would the outcome still have been the same? And it would have been because the enforcement of this policy did not come from the police department. It came from the university's policy in and of itself. Had Mr. Worman not voluntarily withdrawn prior to the compliance deadline and still remained unvaccinated or not successfully obtained an exemption, he still would have been disenrolled from the program. The policy itself was self-enforcing, just as any other university policy. If you don't comply with the policy, you do not have the right to remain a student at the university. So the police, while they may have incidental involvement, it was not a determinative enforcement by the police. Mr. Worman himself, throughout his complaint at different parts, for example, at paragraph 78, 79, and 92 of his complaint, acknowledges that it's only the four non-police officers, Elliott, Metzger, Ellermann, and Hinsman, who were responsible for either creating, implementing the policy, and or reviewing, approving, or denying exemption requests. He does not mention any of the police officers, and the only way you're going to get into state action is if the police were directly involved with that. And by Mr. Worman's own words, he did not, the police were not involved with that at all. I know that we didn't really get too much, but since this is my only time, I'd like to very briefly address the Rehabilitation Act claim. Of course, individual capacity suits against state officials is not appropriate under rehabilitation, so we recognize that he could still bring it against the university, so I'm only going to address that. I would encourage you, I know the district court decided not to actually review the additional materials that were submitted by the parties during the briefing, but since Mr. Worman is so insistent upon looking at his declaration, I would look at the entire declaration, and particularly document 29-2, pages 614 through 616. On page 615, you'll find his actual exemption request. It's on that page. The top half was for the religious exemption request, and it listed the instructions of here's what you're supposed to include for this. The bottom half of the page was for a medical exemption. If you look at that, you'll see that Mr. Worman only checked the top box. He was applying for religious, but never checked the bottom box. He did not actually submit a medical exemption request. But even if you find that he did, and what I accept is true that he did submit a formal medical exemption request, he was not otherwise eligible to continue enrolling at Mount St. Joseph University as a student because he voluntarily withdrew before the policy compliance deadline even hit. He did not finish his current semester. He was not forced to withdraw early. He chose to do that. And further, he was not deprived of any benefits solely on the basis of his disabilities. If you look at paragraphs 115 through 117 of his second amended complaint, you will see that it actually says that it was a direct and proximate result of Mr. Worman having suffered great humiliation, embarrassment, and intimidation by the university police officers. The university police officers only ever talked to him about his religious beliefs. It was nothing to do with any medical issues. And so that is not the sole basis for why Mr. Worman chose to withdraw or would have been removed from the program had he stayed through the compliance deadline. Since Mr. Worman is no longer pursuing the Equal Protection Claim Clause, I will not spend too much time on that. But I will just briefly talk about, I mentioned it before, the district court did not abuse its discretion in failing to provide another opportunity for Mr. Worman to file what would have been his fourth version of the complaint. The district court was extremely patient. Multiple extensions were granted. We had filed our first motion to dismiss. The district court, rather than ruling on that at all, provided Mr. Worman yet another opportunity because he had mentioned in his response in opposition to our first motion to dismiss that there were additional facts that he wanted to add. And so the district court said, okay, go ahead and do that. You're going to get another opportunity to amend before I rule on this motion to dismiss. And instead of amending the complaint to add the additional facts that he had suggested he was going to add with respect to his purported ADA claim, he added the FBI. And so when we filed a second motion to dismiss, we raised nearly the identical issues that were raised below, and they were still not cured. Even after eight weeks between the time when we filed our motion to dismiss and when Mr. Worman filed his response in opposition, eight weeks, he still couldn't get it right. Lastly, I will point out that we do have a fourth version of Mr. Worman's complaint. He filed it just last month trying to initiate an entirely new case against three of our defendants, the two officers and the police department, curiously not the university. And, again, it's based on the same underlying facts and there's nothing new in it. So I do believe it would be futile and the district court properly declined to extend this case any further. If there are no further questions, I appreciate the court's time. I just have one quick question. Going to the Fourth Amendment claim, when you look at the Second Amendment complaint sort of starting at paragraph 54 and you get to paragraph 55, Mr. Worman says, and he was taken into the back room of the Kansas police station and Kuh and Koopman would not allow him to leave. So in construing the complaint in terms of plausible allegations upon which relief can be granted, why isn't that enough to show that a reasonable person, in Mr. Worman's position, would not feel reasonable? Sure, Your Honor. Would feel free to leave. Sure. And, again, I'll go back to U.S. v. Swanson where that same factor was present as well. The individual was told he could not leave until, I forget what the triggering thing to let him leave here. It was until Sister Karen could come. But in Swanson, that wasn't enough. And in Swanson, you actually had even more factors. You had the guns present. You had the physical touching. Here, there's no allegation about any of these other factors. So going through just a couple of them, I won't take up too much time with all 11 of them. But, for example, there's no allegation that there was any restraint on his freedom of movement during the questioning. He voluntarily showed up after being. He did, but he was called a number of times, five or six times, and asked to come. He was, but at the end of the day, he was not compelled to show up. He did voluntarily show up. He said it was a coercive environment. They called him names and told him he should get a new religion and that sort of stuff. Sure, and I do not dispute that perhaps the language was not appropriate. But that does not rise to the level of an unconstitutional seizure for which a 1983 claim can be brought. There was not a threatening presence of multiple officers. It was two officers. The length of the questioning, though, it might have been an hour. In Howes v. Fields, the U.S. Supreme Court didn't even take issue with a five- to seven-hour sharp-tone conversation. They found that that was not a custodial interrogation. So none of these factors except for that one weigh in Mr. Worman's favor, and you have so many either that are neutral or weigh against the finding of a seizure. And because it is a totality of the circumstances, not just one individual factor, we do believe that the district court got it right. Was Swanson a motion to dismiss? Your Honor, I am not entirely sure off the top of my head. It might have been summary judgment. Big difference. It is a difference. However, it's Mr. Worman's burden to at least establish sufficient facts. And the fact that he has not included any of these other factors, and I even touched on them. For example, if he had truly been, and I can understand the situation that not one factor is determinative and certain combinations may be more telling than others. For example, if somebody is handcuffed to a table and has guns pointed at them, that's probably more telling than a seizure. But when Mr. Worman, he did not allege that he ever asked to leave and he told that he couldn't, they just said that you have to wait until Sister Karen comes, who he then later met with privately anyways. And that is in the complaint that he met with Sister Karen. Thank you. Thank you. I'd like to address just a couple of cases. The counsel referred to a case Barnes. It's not briefed, so I can't answer to Barnes. I can answer to Fleck. Fleck involved a campus police officer. Again, I think it's an Eastern District of Pennsylvania case. Fleck involved a campus police officer who was not engaged in police activity. So the university was not held liable. So completely distinguishable facts here. They were enforcing a policy. I'd also look at the Mendenhall test and the multiple factors. I think Judge White, I think you hit it correctly. These are really questions of fact that need to be fleshed out in discovery. Perhaps a summary judgment will be an appropriate argument to make for counsel, which I think it won't be at that time. But really on a motion to dismiss, all inferences should be given to the favorable inferences should be given to the plaintiff. He said he was not free to leave. He was being coerced, that he was being berated. Certainly he was put in great fear and I suggest that should be enough for a seizure, at least at this level. Also, again, I think a lot of the arguments that you heard really were summary judgment type of arguments. The facts don't show this. The facts don't show that. You can't plead every single fact. One of the complaints here is that we pled too much. Now they want more. So again, it's the duality of the arguments here. We want it this way this time. We want it that way the other time. And it really would create a very unfair burden on Mr. Warman in terms of the pleading standards. Again, I would like to touch on the Rehabilitation Act. Mr. Warman had a well-known both physical and psychological problems. He came into the university. They knew that coming into the university. They knew he was under VA care. They knew that he just wanted to be a nurse and to help people. And then he had a four-row GPA and all he needed to do was finish his clinical. And he could have gotten a medical exemption from the Children's Hospital of Cincinnati, but they blocked him from getting that. If he had gotten that medical exemption, he would have finished school. But he was harassed out of school by the constant following of him, the wanted sign essentially on the wall at the police department. It's absolutely mind-blowing that this happened. The harassment, going to class and harassing him. This is a gentleman who suffered with serious depression and anxiety, and he's being followed around campus by the police like a criminal. And he was drummed out of the school because he wouldn't get vaccinated and he could have gotten a medical exemption given his brain tumors, given his stomach, given a whole host of medical problems that he had, which will all come out in discovery. This poor guy was just absolutely treated like garbage for no reason. And I really ask this court to spend time considering how horrible it must have been for Mr. Warman to be put into this situation. And for them to say that he wasn't arrested, that this was a veterans meeting, come on. That's outrageous. This poor guy, he suffered so much and he's still suffering today. And I do want to address, since they raised the other lawsuit that's filed that is against Williston of the FBI, we have to dismiss it without prejudice and redo the claim notice. And we did include Officers Kuhn and Coopman. We're under consideration now whether we'll be withdrawing the complaint against them. That's not really for this court, but just because I wanted the court to understand that there is a claim against Williston. Williston was dismissed from this case, and we wanted to make sure we preserved our claim against the FBI. They got the FBI involved with his psychiatrist to plant false evidence about him in the psychological records. It is outrageous. I have never seen a case where the facts and the treatment of a person has been as outrageous as the treatment of Matthew Warman. And I will defend this man any time, any day. And I will defend the action of having to resign from the school because he was really treated horrifically. No one should ever have to go through that, no matter what they do. Back to a question. Does Mr. Warman ever identify in his amended complaint, second amended complaint, what medical condition he had that would prevent him from taking the vaccine? Is it just his beliefs about that? No, his medical doctor wrote a note. His medical doctor wrote a note that said he's not a candidate, The police and system. There's no explanation, right? I don't. Again, the school, and again, looking at the facts in a light most favorable to plaintiff, the school was aware of his medical conditions. The medical doctor says, given his conditions, he's not a candidate. This is a medical doctor, and we know that there was already evidence at the time when it's pled, there was evidence of significant health risks involved to certain people and of deaths, and that is something that is pled. And again, taking all these facts together, it has to be, I suggest, assumed, that the doctor was correct in his assessment that there was a medical risk. And there's a case from the Ninth Circuit. The case is Health Freedom Defense Fund v. Carvalho, 104 F. 4th, 715 at 725. The Ninth Circuit said even if you disagree, or it goes against conventional wisdom, what the reason is, it has to be accepted as true at the pleading stage. Ultimately, the reasons for the medical exemption may be rejected, but at this stage you have to accept the doctor's reasoning as true. There's evidence in the complaint, and that's why it should be permitted. I'll take another look at the complaint and the doctor's statement. But the medical conditions just generally are the depression and anxiety and his objection to... Brain tumors. Brain tumors, okay. Brain tumors. His objection on a religious basis, apparently. His medical issues included brain tumors, included that his gut was ripped apart by eating an MRV. He also had severe clinical depression and anxiety. So these are conditions that the doctor, and the doctor who is fully familiar with his records, said he's not a candidate given his conditions, and that's... COVID-19 vaccine. Correct.  Thank you very much. Thank you for your arguments. The case will be submitted.